UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TRACIE SUMMERSILL,

        Plaintiff,

-vs-                                        Case No.  5:12-cv-667-Oc-10PRL

NEIL KELLY, CLERK OF THE CIRCUIT
COURT, LAKE COUNTY, FLORIDA,

        Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Tracie Summersill has filed suit against her former employer, Neil Kelly, Clerk of the Circuit Court, Lake County, Florida (the "Clerk"), alleging disability discrimination prohibited by the Americans With Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"), and violations of the Family and Medical Leave Act ("FMLA") (Doc. 5).  The case was originally filed in the Fifth Judicial Circuit Court in and for Lake County, Florida, and was removed to this Court pursuant to 28 U.S.C. § 1331 and 1367 (Doc. 1).

The Clerk has moved for summary judgment asserting, in part, that Ms. Summersill is judicially estopped from pursuing any of her claims because she failed to disclose them in her separate Chapter 13 Bankruptcy proceedings (Doc. 5).[1]  Ms.

---

[1] In its summary judgment motion, the Clerk also argues that Ms. Summersill has failed to establish her claims of disability discrimination and FMLA interference.  Because the Court concludes that Ms. Summersill is judicially estopped from pursuing her claims, the Court need not
(continued...)

Summersill has filed a response (Doc. 14), arguing that any failure to disclose was merely inadvertent and should not bar her claims.

Upon due consideration, for the reasons discussed below, the Court concludes that the doctrine of judicial estoppel bars Ms. Summersill's lawsuit. The motion for summary judgment is due to be granted.

## Undisputed Material Facts

**I.     The Present Lawsuit**

Ms. Summersill was hired by the Clerk on October 18, 1996 as a part-time Summer Hire in the Courts Management/Library department. Ms. Summersill transferred to the position of Central Intake Clerk in the Courts Management department on July 1, 2008, and continued in this position until her employment was terminated on September 28, 2010. She had no performance or disciplinary issues while employed by the Clerk, other than the events related to her termination.

In June 2010, while on vacation, hiking in Tennessee, Ms. Summersill fell and injured her ankle. She returned to work briefly, but ultimately went out on approved FMLA leave. Ms. Summersill took the entire 12 weeks of allotted FMLA leave to deal with this serious medical condition. At the conclusion of her leave period, she was instructed by the Clerk to return to work on September 23, 2010. Ms. Summersill did

---

[1](...continued)
and will not address the Clerk's other arguments.

not return to work on that date or for several days thereafter. Accordingly, on September 28, 2010 the Clerk terminated her employment for "unexcused absences."

Ms. Summersill contends that she did not return to work because the Clerk told her she could only return if she had a full release from her treating physician stating that she had no physical restrictions whatsoever. Ms. Summersill could not obtain such a note, primarily because her ankle injury had not fully healed and she would need either crutches or a walking boot to ambulate. The Clerk contends that Ms. Summersill would have been allowed to return with crutches and/or a walking boot, but that Ms. Summersill never notified the Clerk that she required any accommodations and never provided a return to work form from her treating physician.

## II.   **The Bankruptcy Petition**

On July 20, 2011, Ms. Summersill dual-filed a Charge of Discrimination with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination under the ADA and the FCRA (Doc. 12-8, Ex. 20).

On May 25, 2012, while her Charge of Discrimination was still pending, Ms. Summersill filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code in the Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No. 6:12-bk-07220-CCJ (Docs. 12-1 through 12-3). In the Statement of Financial Affairs filed with her petition, Ms. Summersill was required to "List all suits and administrative

proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Ms. Summersill, who at all times was represented by a bankruptcy attorney (other than her counsel in this case), did not include her pending Charge of Discrimination on the Statement of Financial Affairs. Ms. Summersill signed the Chapter 13 Petition "under penalty of perjury that the information provided in this petition is true and correct." She signed the Statement of Financial Affairs "under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct."[2]

On September 28, 2012, the EEOC issued a Dismissal and Notice of Rights letter to Ms. Summersill which stated, in part, that Ms. Summersill had 90 days from the date that she received the Notice to file any lawsuit she wished to pursue. (Doc. 12-8, Ex. 22). Ms. Summersill filed the present suit in state court that same day (Docs. 1-2). She seeks only monetary damages in the form of back pay, compensatory damages, liquidated damages, and punitive damages (Doc. 5, p. 6). Ms. Summersill did not amend her Statement of Financial Affairs in her Chapter 13 Petition to include this lawsuit.

---

[2]In addition to the exhibits filed by the Clerk, the Court will also take judicial notice of Ms. Summersill's Bankruptcy Petition and related Bankruptcy Court filings. United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); Fed. R. Evid. 201(b).

Ms. Summersill filed her Chapter 13 Plan of Debtors on June 8, 2012. She filed Amended Chapter 13 Plans in her bankruptcy proceedings on October 17, 2012 and again on November 20, 2012. She did not amend her Statement of Financial Affairs to include her lawsuit against the Clerk on any of these occasions.

On January 13, 2013, the Bankruptcy Court entered an Order Confirming the Chapter 13 Plan. At that time, Ms. Summersill still had not disclosed the present lawsuit.

More than eight months later, on August 26, 2013, Ms. Summersill was deposed in this case, and defense counsel questioned her about her bankruptcy filing. Specifically, Ms. Summersill was asked whether she had disclosed this lawsuit in her Chapter 13 Petition. Ms. Summersill testified that she had no recollection about personally disclosing her lawsuit to the Bankruptcy Court, but she did "know that my bankruptcy attorney knew" about the lawsuit (Doc. 12-6, pp. 5-6).

On September 19, 2013, more than nine months after her Chapter 13 Plan had been confirmed, Ms. Summersill filed an Amended Statement of Financial Affairs which, for the first time, disclosed to the Bankruptcy Court the present lawsuit (Doc. 12-4, pp. 25-35).

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. at 2510.

### **Discussion**

Judicial estoppel is an equitable doctrine invoked at a court's discretion to protect the integrity of the judicial system. New Hampshire v. Maine, 532 U.S. 742, 750, 121

S. Ct. 1808, 1815 (2001). The doctrine precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citations and internal quotation marks omitted). The Eleventh Circuit has held that two main factors are to be considered when determining whether judicial estoppel should apply to the maintenance of a particular case. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Burnes, 291 F.3d at 1285 (quoting Salomon Smith Barney, Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001).

Applying this doctrine in the bankruptcy context, "[t]his circuit repeatedly has recognized that when a debtor fails to disclose a pending lawsuit to the bankruptcy court, while having knowledge of the lawsuit and a motive to conceal it, the doctrine of judicial estoppel bars the undisclosed action from proceeding." Dunn v. Advanced Medical Specialities, Inc., ___ Fed. Appx. ___, 2014 WL 503050 at * 2 (11th Cir. Feb. 10, 2014). See also Barger v. City of Cartersville, 348 F.3d 1289, 1296-97 (11th Cir. 2003); De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1291 (11th Cir. 2003); Burnes, 291 F.3d at 1285-88.

There is no dispute that Ms. Summersill filed her Chapter 13 Petition and related papers, including her Statement of Financial Affairs, under oath. There is also no dispute that she failed to disclose her Charge of Discrimination (which was a pending

administrative proceeding at the time she filed her Petition), and that she failed to amend her Petition to disclose her lawsuit against the Clerk. See Burnes, 291 F.3d at 1286 ("A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets to the bankruptcy court.  The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.") (citing 11 U.S.C. §§ 521(a) and 541(a)(7), and In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999)).  Ms. Summersill's failure to disclose this case in her Chapter 13 proceedings as a pending lawsuit, while simultaneously pursuing her claims in this Court constitute inconsistent positions both made under penalty of perjury.

The undisputed material facts also demonstrate that Ms. Summersill had knowledge of the present lawsuit while pursing her Chapter 13 Petition, and that she had a financial motive in not disclosing it.  Ms. Summersill admittedly filed and litigated her ADA and FMLA claims during the pendency of her Chapter 13 case, but never amended her financial statements to include the lawsuit until after her Chapter 13 Plan had been confirmed, and only then, after the issue was raised at her deposition in this case.  During the time her Chapter 13 case was proceeding, she was simultaneously actively litigating the present case, including participating in discovery.  These facts make it abundantly clear that Ms Summersill had knowledge of her claims against the Clerk during the bankruptcy proceedings.  Burnes, 291 F.3d at 1287-88.

The facts further establish Ms. Summersill's motive in concealing the present lawsuit. "[A] financial motive to secret assets exists under Chapter 13 as well as under Chapter 7 because the hiding of assets affects the amount to be discounted and repaid." De Leon, 321 F.3d at 1291. Thus by not disclosing the lawsuit, Ms. Summersill gained an advantage by presenting a lesser amount of assets from which her creditors could obtain repayment.

While admitting that she did not properly and timely disclose this case to the Bankruptcy Court, Ms. Summersill argues that judicial estoppel should not apply for three reasons. First, she argues that no one has been harmed by her failure to disclose, and that she did not obtain any monetary advantage. Rather, Ms. Summersill characterizes her Chapter 13 Petition as "simply a financial restructuring of her mortgage." (Doc. 14, p. 9).

This argument has been squarely rejected by the Court of Appeals. The fact that Ms. Summersill pursued Chapter 13 relief as opposed to a Chapter 7 discharge is of no moment. Judicial estoppel applies equally to both types of bankruptcy filings. De Leon, 321 F.3d at 1291 ("we also conclude that any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies."). Similarly, Ms. Summersill's argument that no party has been harmed by her non-disclosure is also without merit. "The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, . . . [w]hile privity and/or

detrimental reliance are often present in judicial estoppel cases, they are not required." Burnes, 291 F.3d at 1286 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir. 1996)). Lastly, the Court has already determined that Ms. Summersill obtained a financial advantage by concealing her lawsuit, as it most likely impacted the distribution and payment plans to her creditors.

Next, Ms. Summersill argues that her failure to disclose was inadvertent because her bankruptcy attorney was aware of the lawsuit but did not list it on her Chapter 13 filings. Notably, Ms. Summersill has not submitted any testimony from her attorney confirming this assertion. However, assuming that Ms. Summersill did make her bankruptcy attorney aware of the pendency of this lawsuit, and he failed to include it in the bankruptcy filings, "that fact would not forestall the application of the doctrine of judicial estoppel." Dunn, 2014 WL 503050 at * 3. See also Barger, 348 F.3d at 1295. If anything, Ms. Summersill may have a malpractice claim against her bankruptcy attorney, "[b]ut keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." Barger, 348 F.3d at 1295 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 634 n. 10, 82 S. Ct. 1386, 1386 n. 10 (1962)). Thus, any attempt by Ms. Summersill to shift blame to her bankruptcy attorney is of no consequence.

Lastly, Ms. Summersill points to the fact that she did ultimately amend her Statement of Financial Affairs to include the present lawsuit as evidence that she did not intend to conceal any information or make a mockery of the judicial system. This

argument also is unavailing. Ms. Summersill only sought to amend her Statement of Financial Affairs <u>after</u> the Clerk raised the issue at her deposition in this case, more than eight months after the Bankruptcy Court had issued its Order confirming her Chapter 13 Plan.

> The success of our bankruptcy laws requires a debtor's full honest disclosure. Allowing [a debtor] to back-up, reopen the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

<u>Burnes</u>, 291 F.3d at 1288. <u>See</u> also <u>Barger</u>, 348 F.3d at 1297; <u>De Leon</u>, 321 F.3d at 1292. Thus, Ms. Summersill's disclosure of the lawsuit following her deposition does her no favor and will not forestall the application of judicial estoppel. <u>See</u> <u>De Leon</u> 321 F.3d at 1292 (finding judicial estoppel applied where plaintiff did not amend Chapter 13 filings to include employment discrimination lawsuit until after the issue was raised in a motion to dismiss in the discrimination case).[3]

---

[3]Ms. Summersill's reliance on <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355 (3d Cir. 1996) is unpersuasive. Not only is this case non-binding precedent, it is factually distinguishable. In <u>Ryan</u>, the Third Circuit found that the plaintiff did not have any financial motive in failing to disclose a pending lawsuit in his bankruptcy petition because the debtor also failed to disclose several potential liabilities, thereby offsetting any financial gain from not disclosing the lawsuit. <u>See</u> 81 F.3d at 363-64. In contrast, Ms. Summersill only failed to disclose a potential asset - the present lawsuit – which gave her a clear financial benefit in the impact it had on her payments under the Chapter 13 Plan.

**Conclusion**

The facts in this case are not in dispute. The law of the Circuit when applied to these facts demonstrates that judicial estoppel should be applied here to bar Ms. Summersill's ADA and FMLA claims against the Clerk. Accordingly, upon due consideration, the Defendant's Motion for Summary Judgment (Doc. 12) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant Neil Kelly, Clerk of the Circuit Court, Lake County, Florida, and against Plaintiff Tracie Summersill as to all claims. The Clerk is further directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 3d day of April, 2014.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy